IN THE UNITED STATES DISTRICT COURTS
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK TATE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:14-cv-05528 |
| | ) | |
| v. | ) | Judge Elaine E. Bucklo |
| | ) | Magistrate Judge Michael T. Mason |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR RELIEF PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT**

Defendant Ocwen Loan Servicing, LLC ("Ocwen") hereby moves this Court, under Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff Derrick Tate's ("Tate") Complaint for Relief Pursuant to the Fair Debt Collection Practices Act (the "Complaint"). In support of this Motion, Ocwen states as follows:

**INTRODUCTION**

This is an action challenging whether the servicer of a mortgage loan can send monthly statements to a debtor after a Chapter 7 bankruptcy discharge in which the mortgage lien was not extinguished. Tate asserts that sending a monthly statement, even one with a disclaimer for those in bankruptcy clearly stating that the statement was for informational purposes only and not an attempt to collect a debt, violates both the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* Tate's FDCPA and ICFA claims fail as a matter of law because a significant portion of unsophisticated consumers would not interpret the monthly

statements as an attempt to collect a personal debt. Further, to accept Tate's theory of the FDCPA and the ICFA would run contrary to how bankruptcy courts interpret what are acceptable communications between a secured creditor, the creditor's agents, and a debtor after a Chapter 7 discharge. Because, as a matter of law, Tate cannot state a claim upon which relief can be granted under the FDCPA or the ICFA, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A. Tate's Loan Transaction, Default, and Foreclosure

Tate obtained a loan in the amount of $247,500.00 (the "Loan") on April 19, 2007, from BNC Mortgage, Inc. (the "Lender") that was secured by a mortgage (the "Mortgage") on real property commonly known as 7 Vigilance Court, Bolingbrook, Illinois 60440 (the "Property"). *See* **Exhibit A**, Mortgage.[1] The Mortgage was recorded on April 30, 2007, by the Will County Recorder's Office. *See id*. MERS was the mortgagee solely as nominee for Lender and Lender's successors and assigns. *See id*. The Mortgage was assigned from MERS to Citibank, N.A. as Trustee for BNC Mortgage Loan Trust 2007-3 Mortgage Pass Through Certificates Series 2007-3 prior to May 21, 2009 ("Trustee"). *See* **Exhibit B**, Assignment. The Assignment was recorded on October 11, 2011, by the Will County Recorder's Office. *See id*. Tate defaulted on the Loan. (Compl. ¶ 11.) Trustee filed a foreclosure action on August 14, 2009. *See* **Exhibit C**, Lis Pendens.

---

[1] "[A] defendant may introduce certain pertinent documents if the plaintiff failed to do so[]" without converting a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (citing *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir. 1991)). The recorded Mortgage, Assignment, and Lis Pendens should be considered in this Motion under Rule 12(b)(6) because they are verified matters of public record, referred to in the Complaint, and central to the alleged claims. *See id*.

### B. Tate's Chapter 7 Bankruptcy and Ocwen's Subsequent Attempts to Provide Tate Information on the Mortgage Lien

Tate filed for bankruptcy under Chapter 7 on May 10, 2010. (Compl. ¶ 12.) On September 14, 2010, Tate was "granted a discharge under section 727 of title 11, United States Code (the Bankruptcy Code)." (Compl. Ex. D at 1.) Included with the discharge order was the notice that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy[.]" (Compl. Ex. D at 2.) The discharge order does not indicate that any liens were avoided or eliminated by Tate in the bankruptcy. (Compl. Ex. D.) Tate appears to have neither forfeited the Property, nor signed a reaffirmation agreement for the mortgage, nor redeemed the Property in the bankruptcy. (Compl. Exs. B, C, D.)

Ocwen took over servicing the Loan on April 2, 2012. (Compl. Ex. E.) Ocwen sent monthly statements to Tate on July 17, 2012, September 17, 2012, October 17, 2012, and September 17, 2013. (Compl. ¶¶ 25-28, Exs. F-I.) Those statements noted that "[i]f you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back of this statement." (Compl. Exs. F-I.) Prominently displayed on the back of the statement in its own box, in bold lettering, under the capitalized, bolded, and underlined heading "**IMPORTANT BANKRUPTCY INFORMATION**" is the following statement:

> **If you or your account are subject to pending bankruptcy or the obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt. If you have questions regarding this statement, or do not want Ocwen to send you monthly statements in the future, please contact us at 1-888-554-6599.**

See **Exhibits D**, **E**, **F**, **G** (true and correct copies of the back of Exhibits F - I attached to the

Complaint, which were excluded from Tate's filing).[2] Further, on the front of each statement is a notice that "this statement may be for informational purposes only" because the Loan was in foreclosure. (Compl. Exs. F-I.)

### C. The Allegations in the Complaint

The Complaint alleges that "the subject debt," the Loan, was discharged in Tate's bankruptcy. (Compl. ¶ 19.) Tate asserts two claims. One for violation of the FDCPA, and a second for violation of the ICFA. The FDCPA claim alleges that the monthly statements were false or misleading representations in violation of 15 U.S.C. §§ 1692e(2) and 1692e(10) and were an unfair or unconscionable means to collect a debt in violation of 15 U.S.C. §§ 1692f and 1692f(1). (Compl. ¶¶ 39-48.) The ICFA claim alleges that the monthly statements were "an unfair and deceptive practice" that used "fraud, deception, and misrepresentation" in an "attempt to collect a discharged or otherwise extinguished debt" from Tate in violation of 815 ILCS 505/2. (Compl. ¶ 50.) Tate seeks declaratory relief, statutory damages under the FDCPA, actual damages, punitive damages under the ICFA, and attorney's fees and costs. (Compl. at 7, 9.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted when the pleadings fail to state a claim upon which relief may be granted. Such a motion tests the sufficiency of the facts and legal theories alleged in the complaint, because "[a]t a minimum, a complaint must contain facts sufficient to state a claim as a matter of law." *Hickey v. O'Bannon,* 287 F.3d 656, 657 (7th Cir. 2002). "[A] plaintiff's obligation to provide the

---

[2] "[D]ocuments that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice" may be considered on a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted). Here the Complaint omitted the full monthly statements sent to Tate. Because the monthly statements are referred to in the Complaint and the Complaint relies on their contents for the asserted claims, the full monthly statement should be considered by this Court in ruling on this Motion. *See id.*

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007)).

"When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454-55 (7th Cir. 1998). Such inconsistent exhibits "result in a plaintiff pleading himself out of court." *Jonathan Pepper Co., Inc. v. Hartford Cas. Ins. Co.*, 381 F. Supp. 2d 730, 732 (N.D. Ill. 2005) (citing *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998)).

## ARGUMENT

**I. TATE'S FDCPA CLAIM FAILS BECAUSE THE MONTHLY STATEMENTS WERE NOT AN ATTEMPT TO COLLECT A PERSONAL DEBT.**

**A. The Monthly Statements Did Not Violate the FDCPA Because They Could Not Be Confused With an Attempt to Collect a Debt.**

To allege a violation of the FDCPA, a plaintiff must state facts showing that the defendant is a debt collector and the communication at issue was made in connection with collecting a debt. *See Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380, 384 (7th Cir. 2010). In the Seventh Circuit, FDCPA claims under 15 U.S.C. §§ 1692e – false or misleading representations – and 15 U.S.C. § 1692f – unfair practices – are evaluated using the objective "unsophisticated consumer" standard. *See Clark v. Pinnacle Credit Serv., LLC*, 697 F. Supp. 2d 995, 999 (N.D. Ill. 2010). While described as "uninformed, naïve, or trusting," the unsophisticated consumer "possesses rudimentary knowledge about the financial world, is wise

5

enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (citations and internal quotations omitted). So, while "not as learned in commercial matters as are federal judges," the unsophisticated consumer is "not completely ignorant[.]" *Id*. (citations omitted). The unsophisticated consumer "may tend to read collection letters literally," but "does not interpret them in a bizarre or idiosyncratic fashion." *Id*. (citations omitted). Unsophisticated consumers read information on the back of a letter if prompted to do so by the front of the letter. *See McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir. 2002).

The Seventh Circuit has rejected adopting the lower "*least* sophisticated consumer standard." *See Gruber v. Creditors' Protection Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014); *Pettit*, 211 F.3d at 1060. In applying the unsophisticated consumer standard to a motion to dismiss under Rule 12(b)(6), a trial court should dismiss an FDCPA claim on its "determination that the statement complied with the law" when the statements made are plainly "not misleading or deceptive." *Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009); *see also*, *Zemeckis v. Global Credit & Collection Corp.*, 670 F.3d 632, 636 (2012) ( "[A] plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.") (internal citation and quotation omitted)).

In the bankruptcy context, a monthly statement that contains prominent language that the statement is for informational purposes has been found to not be an attempt to collect a debt from the debtor personally. *See Zotow v. Johnson* (*In re Zotow*), 432 B.R. 252, 259-60 (B.A.P. 9th Cir. 2010) (noting that disclaimer language is sufficient where there is no further evidence of

harassment or coercion); *see also*, *Mele v. Bank of Am. Home Loans* (*In re Mele*), 486 B.R. 546, 557-58 (Bankr. N.D. Ga. 2013) (finding that fifteen account and payoff demand statements did not constitute an attempt to collect a debt where disclaimer language was present); *In re Nordlund*, 494 B.R. 507, 517 (Bankr. E.D. Cal. 2011) (monthly statements with "informational purposes only" language were not an attempt to collect a discharged debt from the debtors personally).

A significant portion of unsophisticated consumers, with the information available to Tate, would not be confused about whether the monthly statements were an attempt to collect a personal debt. A hypothetical unsophisticated consumer would have received a bankruptcy discharge that clearly informed her that the owner of her mortgage "may have the right to enforce a valid lien, such as a mortgage [.]" (Compl. Ex. D at 2.) Further, that unsophisticated consumer would have known that the mortgagee could continue foreclosure through the bankruptcy process. (Compl. Ex. A.) That unsophisticated consumer would have received four monthly statements indicating in prominent, boxed, and bolded language that the statement was "**for informational purposes only**" and "**not an attempt to collect a debt**" because she was subject to a bankruptcy discharge. *See* **Exs. D-G**. Ocwen also provided a number to call if there were any questions about those statements and offered the unsophisticated consumer the ability to stop receiving future statements if she chose to do so. *See* **Exs. D-G**. Finally, that unsophisticated consumer would have seen a notice on the front of each monthly statement that the statement "may be for informational purposes only" because the Loan was in foreclosure. (Compl. F-I.)

Tate's idiosyncratic reading of the monthly statements to reassert his personal liability after the Chapter 7 discharge would not be the interpretation of a significant portion of

7

unsophisticated consumers with the same information as Tate. An unsophisticated consumer would not be confused about whether an informational monthly statement voided the effect of their Chapter 7 discharge because she would be "wise enough to read collection notices with added care" and possess "rudimentary knowledge about the financial world." *See generally, Pettit*, 211 F.3d at 1060. For the same reasons, bankruptcy courts have found that statements with similar disclaimers do not violate the automatic stay or the discharge injunction because they are not attempts to collect a personal debt. *See Zotow*, 432 B.R. at 259-60; *Mele*, 486 B.R. at 557-58; *In re Nordlund*, 494 B.R. at 517. Knowing that the statement was for informational purposes only, the risk of credit reporting would not exist. Therefore, it was not misleading, deceptive, unfair, or unconscionable to send Tate the monthly statements, and his FDCPA claim should be dismissed with prejudice.

### B. The Monthly Statements Did Not Violate the FDCPA By Informing Tate of His Outstanding Mortgage Debt.

Contrary to the assertions in the Complaint, "bankruptcy affects the availability of different collection remedies without affecting the existence of the debt itself." *In re Okosisi*, 451 B.R. 90, 95 (Bankr. D. Nev. 2001); *see also, Picht v. Picht*, (*In re Picht*), 428 B.R. 885, 891 (B.A.P. 10th Cir. 2010) ("Clearly, the Pichts' personal liability for the debt was discharged in their Chapter 7 case, but . . . the underlying debt itself had not been extinguished."). "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor *in personam* – while leaving intact another – namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

In denying class certification for claims related to sending post-discharge monthly statements to Chapter 7 debtors, including FDCPA claims, one court noted that debtors, who do not reaffirm the mortgage, or forfeit or redeem a property in bankruptcy "need to receive

8

monthly billings to avoid a contractual default and potential foreclosure." *Kibler v. WFS Financial, Inc.* (*In re Kibler*), 2001 WL 388764, at *5 (Bankr. E.D. Cal. 2001); *see also*, *Ramirez v. Gen. Motors Acceptance Corp.* (*In re Ramirez*), 280 B.R. 252, 258 (C.D. Cal. 2002) (failing to send monthly statements for secured debts post-discharge "would unduly complicate the lives of debtors and likely result in a greater number of missed payments and foreclosures by creditors."). In fact, the *Kibler* Court noted that "continuation of customary pre-petition billing practices, is ordered by some bankruptcy judges." 2001 WL 388764, at *5.

Tate's interpretation of the FDCPA completely ignores the fact that the debt itself was not extinguished by the bankruptcy. *See Johnson*, 501 U.S. at 84. In fact, it misstates that legal reality by claiming that the debt was no longer owed. (Compl. ¶ 40.) In that respect, the monthly statements were not misleading or deceptive as required for a violation of 15 U.S.C. § 1692e, nor were they unfair or unconscionable under 15 U.S.C. § 1692f. A debt was still owed, and it was enforceable through an *in rem* action. *See Johnson*, 501 U.S. at 84. Ocwen provided statements to Tate "**for informational purposes only**" in case he wished to avoid a valid, *in rem* claim – a foreclosure judgment and order of possession. To allow Tate's Complaint to survive a motion to dismiss would suddenly make every single statement tacitly approved of by the *Kibler* Court a potential violation of the FDCPA. *See Kibler*, 2001 WL 388764, at *5. Further, it would make the sending of monthly statements to every debtor who, like Tate, had not reaffirmed the mortgage, or forfeited or redeemed the property during bankruptcy, a potential violation of the FDCPA. *See id*. Tate's Complaint fundamentally confuses the requirements for an unsecured creditor after a bankruptcy discharge with the obligations of a secured creditor.

Tate asks this Court to reach the absurd conclusion that an action that does not violate the discharge injunction in a bankruptcy does violate the FDCPA. The fact that bankruptcy courts

have found monthly statements, like the ones at issue here, not to be an attempt to personally collect a debt in violation of a discharge injunction should control whether there is also a potential FDCPA violation. Otherwise, there is a complete disconnect between what the bankruptcy courts are telling secured creditors in terms of what constitutes an attempt to collect a debt for the purpose of violating the discharge injunction, and the risk of litigation under the FDCPA in district courts. Because Tate's interpretation ignores that a debt secured by a lien survives bankruptcy and would create a collision between how this court and how bankruptcy courts interpret an attempt to collect a debt, his FDCPA claims should be dismissed with prejudice.

### C. Due to the Statute of Limitations, Tate Cannot State a Claim for Violation of the FDCPA Based on the 2012 Monthly Statements.

An action for violation of the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692l(d). Actions under the FDCPA related to a mailed communication accrue on the date of mailing. *See Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992).

In this case, the Complaint was filed on July 20, 2014 [Doc. 1]. The alleged violations of the FDCPA occurred on July 17, 2012 (over two years prior to filing), September 17, 2012 (one year and ten months prior to filing), October 17, 2012 (one year and nine months prior to filing), and September 17, 2013 (ten months prior to filing). (Compl. ¶¶ 25-28.) Therefore, to the extent that each monthly statement is alleged to be a separate violation of the FDCPA, only the September 17, 2013, monthly statement can survive a motion to dismiss due to the one year statute of limitations.

## II. TATE'S ICFA CLAIM FAILS AS A MATTER OF LAW

To plead a cause of action for violation of the ICFA, Tate must allege: "(1) a deceptive

10

act or practice by a defendant; (2) a defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002) (citation omitted). "Recovery may be had for an unfair practice as well as deceptive conduct." *Id*. (citations omitted). A statement is deceptive under the ICFA "if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (finding that ICFA claim for a deceptive statement could not survive a motion to dismiss where the statement was true). For a practice to be unfair, "a defendant's conduct [must be] 'so oppressive as to leave the consumer with little alternative except to submit to it[.]'" *Batson v. Live Nation Entertainment, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) (quoting *Robinson*, 775 N.E.2d at 961).

In this case, because there was actually a valid debt enforceable *in rem*, and each statement indicated that it was "**for informational purposes only**" and "**not an attempt to collect a debt**," for purposes of personal liability, there was no deceptive statement, a determination this Court can make as a matter of law without resort to the unsophisticated consumer test. *See Bober*, 246 F.3d at 938. Similarly, Tate cannot make an argument that the informational monthly statements were so oppressive that he had no choice but to submit to them and pay them. In fact, if Tate was personally confused by the letter (as opposed to the confusion of a significant population of unsophisticated consumers under the FDCPA), he had the option to call the number Ocwen provided in the letter and clarify the statement instead of sending in payment, or to not pay at all. *See* **Exs. D-G**. The existence of other alternatives defeats an ICFA claim for an unfair practice. *See Batson*, 746 F.3d at 833 (concertgoer could have chosen to not purchase a ticket at a price that included unnecessary parking fees). Because the plain language

11

of the monthly statements shows that the language was neither deceptive nor an unfair practice, Tate's ICFA claims should be dismissed with prejudice.

In addition, the ICFA claim must be dismissed because, as discussed in Section I.B above, an interpretation that the monthly statements were somehow a deceptive or unfair practice is inconsistent with the holdings of various bankruptcy courts that such statements are appropriately issued post-discharge, and ordered to be issued in some cases.

## CONCLUSION

For the foregoing reasons, Ocwen Loan Servicing, LLC respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice, and grant such other and further relief as is just and proper.

Dated: September 16, 2014          Respectfully submitted,

                                               BRYAN CAVE LLP

                                               By: /s/ Leighton O'Connell-Miller
                                               Jena Valdetero (#6290948)
                                               Leighton O'Connell-Miller (#6309812)
                                               *Attorneys for Defendant Ocwen Loan Servicing, LLC*
                                               161 N Clark Street, Ste. 4300
                                               Chicago, IL 60601
                                               (312) 602-5000 (tel.)
                                               (312) 602-5050 (fac.)
                                               jena.valdetero@bryancave.com
                                               leighton.oconnellmiller@bryancave.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a true and correct copy of the foregoing document was served via ECF, this 16th day of September, 2014, which will send notice to all parties of record.

                                                            /s/ Leighton O'Connell-Miller
                                                              Leighton O'Connell-Miller